UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY SAVAGE,
                Plaintiff,

    v.

CITY OF BERKELEY, OFFICER V. HUYNH, OFFICER P. HONG, Does 1-100, BUILDING OPPORTUNITIES FOR SELF-SUFFICIENCY, CEDRIC MCFARLAND, Does 101-200,

                Defendants.

No. C 05-02378 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motions for Summary Judgment**

On June 10, 2005 plaintiff Henry Savage filed an action against the City of Berkeley, Officer Van Huynh, Officer Peter Hong, Doe defendants 1-100 (collectively "Berkeley defendants") as well as Building Opportunities for Self-Sufficiency ("BOSS"), its employee Cedric McFarland and Doe defendants 101-200 (collectively "BOSS defendants").  Plaintiff alleges that he sustained injuries on June 10, 2004 when defendant Officers Huynh and Hong attempted to evict him from his room at the 9th Street Transitional Housing Program ("9th Street") at the direction of defendant McFarland. Plaintiff's claims against the Berkeley defendants include federal state causes of action pursuant to the 42 U.S.C. section 1983 and 42 U.S.C. sections 1985–86; and state causes of action pursuant to California Civil Code section 51.7 and section 52.1 as well as common law claims of false detention, arrest or imprisonment and battery.  Savage's claims against the BOSS defendants include state law causes of action for violations of California Health and Safety Code sections 50580–50912; California Civil Code sections 1940.2, 1942.5 and 1927[1]; and Berkeley Municipal Code sections 13.76.050,13.76.140.  Finally, he brings the following common law claims against all of the

1  defendants: conversion; intentional infliction of emotional distress and negligence. Now before the
2  court are two motions for summary judgment by Berkeley defendants and BOSS defendants.

BACKGROUND[2]

I.    Factual Background

Defendants officers Huynh and Hong are police officers for the City of Berkeley. Defendant BOSS is a non-profit organization which operates homeless shelters and temporary transitional housing in Berkeley, California. Defendant Cedric McFarland is employed by BOSS as a substance abuse and mental health case manager. He is also the property manager at BOSS's 9th Street facility where plaintiff applied for residency.

On approximately May 5, 2004 plaintiff moved into a room at the 9th Street Transitional Program operated by BOSS. Defendants describe 9th Street as "short term stepping stone to more permanent housing . . . ." McFarland Decl., Ex. B. Residents are accepted on a probationary basis for three weeks. Id. If residents are not accepted into the program, the Tenant Agreement provides that residents will be notified in writing. Id. The agreement further provides that residents must pay the monthly fee on the first day of the month. Id. If a resident is having difficulties making the payment, it is his or her responsibility to communicate that to the case manager. Id. The agreement notifies the resident that failure to pay the monthly fee may result in expulsion from the program. Id. Under the section titled "Disruptive Behavior," the agreement further states: "If participant refuses to exit the program and vacate the premises, staff and/or house manager will call the police and have he or she removed." Id. One of the conditions listed under "Termination/Expulsion From Program Tenancy" in the agreement states that "non-payment of rent after the fifth day of the month" will result in immediate termination and eviction from tenancy. Id.

On June 10, 2004 plaintiff alleges that he returned from work to his room at 9th Street to find his door open and his belongings removed. Plaintiff also noticed police vehicles outside of 9th Street. According to plaintiff, McFarland asked plaintiff to leave the premises. McFarland claims that he asked plaintiff to leave 9th Street because he had not complied with the terms of the tenancy

UNITED STATES DISTRICT COURT
For the Northern District of California

agreement and his probationary period. BOSS Defs.' Mot. at 4:18–22. McFarland also claims that he notified plaintiff of the situation in writing on four occasions. Id. at 3:18, 3:23, 4:7–8, 4:18–19. Plaintiff contends, however, that defendant McFarland tried to evict him in retaliation for plaintiff's reporting of a gas leak at 9th Street against McFarland's instructions. Pl. Compl. at 5:1–7. When McFarland asked plaintiff to leave on June 10, plaintiff responded that he would not leave without being ordered to do so by a court. McFarland then asked Officers Huynh and Hong to tell plaintiff that he was requested to leave the 9th Street facility. Orebic Dec., Exh. A at 38:1–25 ("Savage Deposition")**.** The officers relayed the information, asked plaintiff his name and date of birth and called that information into a dispatch operator at the Berkeley police station. Id., at 58:13–59:2. The operator reported that plaintiff was a "sex offender out of Minnesota." Id. at 59:5–7. The officers questioned plaintiff about whether he was registered in California as a sex offender and when he replied that he was not registered, the officers told him that he needed to register. Id. at 63:6–24. In one account of the events, plaintiff claims that after this encounter, he asked the officers "if they were finished" and when they responded "yes" plaintiff turned to leave at which point he was "slammed . . . to the floor." Pl.'s Opp. at 7:2–5. In another account, plaintiff asserts that he walked out of the room while one of the officers was talking to him. Savage Dep. March 16, 2007at 87:3–13. Plaintiff recounts that the officer said "Hey, I'm talking to you" and when plaintiff didn't respond the officer "grabbed [his] right arm and slammed [him] on the floor." Id. Plaintiff claims that he told the officers that he was injured but they told him "[he was] just faking." Pl.'s Opp. at 2:20–21. Plaintiff claims that he asked if he was under arrest and the officers responded that he was under arrest. Id. Plaintiff then asked to speak to the officers' supervisors and after he did so the officers said that plaintiff was not under arrest. Id. at 2:22–25. Then plaintiff claims that the officers told him to "get out of here boy." Id. at 3:1. Plaintiff then left the premises and went to the hospital where he alleges he was diagnosed as having a dislocated and bruised shoulder. Id. at 3:4–7.

II.     Plaintiff's Allegations

3

On the basis of these events, plaintiff claims that defendant McFarland is liable to him for unlawfully evicting him from 9th Street and illegally converting his property. Plaintiff alleges that McFarland intentionally caused him emotional distress and was negligent in the performance of his duties. Such acts, plaintiff claims, deprived him of his constitutional right to due process. Plaintiff claims that BOSS is liable for the acts of McFarland under a theory of respondeat superior.

Against Officers Huynh and Hong, plaintiff claims deprivation of his constitutionally protected rights to be free from unlawful arrest, to equal protection under the law and to due process. Plaintiff claims that Officers Huynh and Hong committed tortious acts upon plaintiff by falsely detaining him and committing battery upon him on account of his race. Plaintiff also claims that Officers Huynh and Hong illegally converted his property. Plaintiff claims the City of Berkeley is liable for the acts of its officers due to a City policy of ignoring the illegal acts of its officers and improperly addressing the situation of officers violating individuals' constitutional rights. The City is also liable to plaintiff, plaintiff asserts, on the theory of respondeat superior.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

4

genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

DISCUSSION

I.   BOSS Defendants' Motions for Summary Judgment and Partial Summary Judgment

BOSS defendants' moved for summary judgment on seven of plaintiff's causes of action on the basis that Savage was not a tenant and, therefore, that certain causes of action invoking the rights of a tenant are inappropriate.  They further argue that they had good cause grounds for evicting plaintiff and that he received all of his property upon eviction.  The court will first consider the BOSS defendants' arguments challenging Savage's status as a tenant and program participant and then consider their remaining arguments.

   A.   Evidentiary Objections

BOSS defendants raise several evidentiary objections to Savage's evidence offered in opposition to their motion for summary judgment.  Because the court did not consider the Police Review Commission Report, it need not rule on this objection.  They also object to Savage's Declaration because it was not signed by Savage in accordance with F.R.C.P 56(e) and Local Rule 7–5.  **In fact, it appears that plaintiff has not signed the Declaration and he must do so in order to survive the motion for summary judgment.**

   B.   Savage's Status as a Tenant and Program Participant

BOSS defendants assert that Savage was never a tenant or a participant in their program and, therefore, he may not properly invoke the statutory protections of a tenant.  According to the BOSS defendants, then, his causes of action must fail for unlawful eviction and retaliation under Berkeley Municipal Code sections 13.76.130 and 13.76.14 (Ninth and Eleventh Causes of Action), for retaliation under California Civil Code section 1942.5 (Tenth Cause of Action) as well as unlawful

UNITED STATES DISTRICT COURT
For the Northern District of California

interference with his quiet enjoyment of rental property under California Civil Code sections 1927, 1940.2 (Twelfth, Thirteenth, and Fourteenth Causes of Action).  Similarly, the BOSS defendants allege that Savage was never formally accepted into the 9th Street Transitional program as a program participant under the terms of the Transitional Housing Participant Act, California Health & Safety Code sections 50580–50591 (Eighth Cause of Action).  These defendants claim that they are entitled to judgment as a matter of law on these claims because these statutory provisions do not apply to plaintiff.

However, the court is not satisfied that the BOSS defendants have established that they are entitled to judgment as a matter of law. While the parties dispute whether Savage was a tenant within the terms of the Tenancy Agreement,[3] it is not clear that demonstrating that Savage was not a tenant per the Agreement would dispose of his claims. For instance, a cursory examination of the Berkeley Municipal Code suggests that Savage may invoke the protections of sections 13.76.130 and 13.76.140 even if he does not meet the contractual definition of tenant.  For the purposes of the Code, tenant refers to tenants, lessees and other such parties as well as "any other person entitled to the use or occupancy of such rental unit." Berkeley Municipal Code § 13.76.040(I).   In fact, one of the stated purposes of section 13.76 is "to advance the housing policies of the City with regard to low and fixed income persons, minorities, students, handicapped, and the aged." Berkeley Municipal Code § 13.76.030.  Rental unit, as defined by the code, is "any unit in any real property, including the land appurtenant thereto, rented or available for rent for residential use or occupancy (including units covered by the Berkeley Live/Work Ordinance No. 5217-NS), located in the City of Berkeley, together with all housing services connected with use or occupancy of such property such as common areas and recreational facilities held out for use by the tenant." Section 13.76.040(G).  It appears likely to the court that BOSS meets one of the Code's exceptions, although the BOSS defendants have not provided sufficient evidence for a conclusive determination. Section 13.76.050(L) excepts from section 13.76 of the Code:

> Rental units in a facility owned or leased by an organization exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code that has the primary purpose of operating a treatment, recovery, therapy, sanctuary or shelter program for qualified clients, where such rental units are provided incident to the client's participation in the primary program and where the client has been informed in writing of the temporary or transitional nature of the housing at the inception of

6

> his or her participation in the program. However, except as may be preempted by the Transitional Housing Participant Misconduct Act (California Health and Safety Code Sections 50580 et. seq.) or other state or federal law, such rental units shall not be exempted from the terms of Section 13.76.130, Good Cause Required for Eviction. For purposes of Section 13.76.130.A.2, the client's continued eligibility for participation in the treatment, recovery, therapy, sanctuary or shelter program shall be deemed a material term of the client's rental agreement with the program's operator.

Even if the BOSS defendants were to establish that BOSS fit this exception, the statute dictates that transitional housing programs are not exempt from the terms of 13.76.130. Therefore, in the absence of any other evidence or argument, it appears to the court that Savage may bring a claim under section 13.76.130. Whether he may bring a claim under 13.76.140 has not been conclusively established. Accordingly, the BOSS defendants have not demonstrated that, as a matter of law, Savage may not invoke the protections of Berkeley Municipal Code sections 13.76.130 and 13.76.140.

BOSS defendants have not provided any support for their contention that Savage was not a tenant or hirer within the meaning of California Civil Code sections 1927, 1940.2, and 1942.5 where those terms appears. Section 1927 refers to "hirers" and is generally construed to apply to a landlord-tenant relationship.[4] See, e.g., Guntert v. Stockton, 55 Cal. App. 3d 131 (1976). Section 1940.2, which prohibits acts of theft, extortion or menacing conduct by a landlord seeking to have tenant vacate dwelling, protects "tenants." Likewise section 1942.5 is directed at "lessees."[5] These sections apply to "all persons who hire dwelling units located within this state including tenants, lessees, boarders, lodger, and others, however denominated." Cal. Civ. Code § 1940(a). Aside from the evidence previously mentioned, the BOSS defendants have not presented any arguments to show that Savage may not claim the protections under these three statutes.

The BOSS defendants also argue that Savage was not a program participant within the meaning of the Transitional Housing Misconduct Act, California Health & Safety Code section 50582(c). According to the statute, a program participant is

> a homeless person [as defined by the statute] under contract with a program operator to participate in a transitional housing program and to use a dwelling unit in the program site. For the purposes of naming a defendant under this part, or a person to be protected under this part, "participant" shall include a person living with a participant at the program site. The contract shall specifically include the transitional housing program rules and regulations, a statement of the program operator's right of control over and access to the program unit

7

occupied by the participant, and a restatement of the requirements and procedures of this chapter.

Id. at § 50582(c).  To support this argument, the BOSS defendants point to the terms of the Tenancy Agreement, which state that acceptance into the program will be communicated in writing and the fact that BOSS wrote to Savage to explain that he was not accepted in to the program.  See Tenancy Agreement, McFarland Dec., Exh. B; Letter to Savage, June 5, 2004, McFarland Dec., Exh. E. Having not been accepted into the program pursuant to BOSS' rules and regulations, Savage was not "under contract" with BOSS to participate in its programs as required by section 50582(c). Accordingly, Savage may not pursue claims as a program participant under the Transitional Housing Misconduct Act.

In sum, the court concludes that the BOSS defendants have established that Savage is ineligible as a program participant under the Transitional Housing Misconduct Act.  The BOSS defendants have not established that Savage is ineligible to invoke the protections of California Civil Code sections 1927, 1940.2, and 1942.5.  The BOSS defendants motion for summary judgment is GRANTED IN PART with respect to Savage's claim under the Transitional Housing Misconduct Act and DENIED IN PART with respect to his claims under California Civil Code sections 1927, 1940.2, and 1942.5.

### C.     Good Cause

BOSS defendants raise a good cause defense to Savage's claims for unlawful eviction and retaliation under both the Berkeley Municipal Code and his claims for unlawful retaliation and interference with quiet enjoyment of his rental property under the California Civil Code.  They argue that Savage's violation of a substantial term of the Agreement, namely failure to pay rent, is a good cause ground for evicting Savage.  Savage, however, has submitted a declaration asserting that he had paid the necessary program fees or attempted to do so.  Savage Dec. at ¶¶ 15–16.  He further states in his declaration that the actions taken against him by BOSS and defendant McFarland were in retaliation for plaintiff's complaint about the gas leak.  Id. at ¶¶ 16–20.  Whether Savage was evicted for good cause and whether he was retaliated against for his complaint are questions of fact. Because plaintiff's declaration has gone beyond the pleadings and, by declaration, "set forth specific

facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), BOSS defendants' motion for summary judgment as to the unlawful eviction and retaliation claims is DENIED.

### D.  Conversion Claim

Finally, BOSS defendants assert that they are entitled to summary judgment on plaintiff's conversion claim because he signed a document stating that he had retrieved all of his personal belongings. Therefore, defendants claim, there is no triable issue of fact as to whether defendants destroyed or otherwise disposed of plaintiff's personal belongings. Plaintiff stated in his declaration, however, that he "did not receive [his] bicycle, some of his clothing, food and other items." Savage Dec., at ¶¶ 20–23. Whether or not all of plaintiff's belongings were returned to him is, therefore, a disputed issue of material fact. Because plaintiff has rebutted defendants' assertion in the form of admissible evidence, summary judgment must be denied.

The court notes that the BOSS defendants have raised no arguments for granting summary judgment as to plaintiff's claims for intentional infliction of emotional distress (Sixteenth Cause of Action) or for negligence.

## II.  Berkeley Defendants' Motion for Summary Judgment

Berkeley defendants have also moved for summary judgment on the claims plaintiff asserts against them. Berkeley defendants first contend that they are entitled to summary judgment on plaintiff's unlawful detention claims because the officers had reasonable suspicion to detain plaintiff. Berkeley defendants further assert that the officers are entitled to qualified immunity. They also argue that plaintiff has not alleged facts sufficient to establish a cause of action for several claims: substantive due process, intentional infliction of emotional distress, equal protection, race-based violence, a Monell claim, conspiracy, and conversion. Finally, Berkeley defendants argue that plaintiff has not stated a viable claim for relief against them on the basis of negligence because the officers had no duty to plaintiff to investigate his situation before acting and the officers are immune from such suits.

9

A. Evidentiary Objections

The Berkeley defendants raise several objections to the declaration submitted by Savage in opposition to their motion as well as to documents attached to the Taylor declaration. First, they ask the court to strike the entirety of Savage's declaration for failure to sign the copy served on the Berkeley defendants. As noted above, plaintiff must sign the declaration in order to survive summary judgment on the affected claims. They also ask that the statements by Savage describing the statements of his doctor be stricken as hearsay testimony. The court agrees. Finally, they argue that Savage's declaration of November 27, 2006 contradicts his earlier deposition testimony that indicated that Officer Huynh grabbed Savage's arm after Savage walked away during Huynh's questioning. Plaintiff cannot raise a material issue in a declaration by contradicting his own sworn testimony. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 237 (7th Cir. 1991). Therefore, Savage's description of his doctor's statements as well as his statements about the events immediately preceding Huynh's use of force are stricken. Because the court has not relied on either the medical record offered by Savage or the Berkeley Civilian Police Review Commission's report, it need not rule on these objections.

B. Plaintiff's Section 1983 Claims

Savage claims that the Berkeley defendants violated his constitutional rights when Officers Huynh and Hong detained him. Pursuant to 42 U.S.C. section 1983, he seeks damages for violations of the Fourth Amendment, Equal Protection Clause, and the Due Process Clause (First Cause of Action) for unlawful detention and excessive force.

1. Unlawful Detention Claims

Berkeley defendants claim that officers are entitled to qualified immunity on the unlawful detention and excessive force claims. A police officer is entitled to qualified immunity based on a determination of "whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question [is] whether the right was clearly established." Saucier v. Katz and In Defense of Animals, 533 U.S. 194, 200 (2001). Whether the right was clearly established "must be [determined] in light of the specific context of the case, not as

10

a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Id. at 201. In Saucier, the Supreme Court instructed lower courts not to deny summary judgment any time there was an outstanding question of material fact. Assuming there was a constitutional violation, the inquiry is whether the right violated is so clearly established that it was unreasonable for the officer to have violated it. Id. at 202, 207.

Assuming plaintiff had a legal right to be at 9th Street, the court must determine whether the officers' actions were reasonable in this context. The First Circuit confronted an analogous fact pattern in Higgins v. Penobscot Co. Sheriff's Dept., 446 F.3d 11 (1st Cir. 2006) (concluding that police did not act unreasonably in evicting plaintiff from property, where it was later determined that plaintiff was rightfully on property). The dispositive question of the officer's reasonableness was whether the officer "could be found to have known that it was an unlawful eviction." Id. at 9. Based on the fact that witnesses offered evidence in support of their claim that plaintiff was trespassing and the only evidence plaintiff provided of his right to be on the property was "a conclusory verbal claim of entitlement," the court held that the deputy's decision to believe the witnesses and "to defuse the situation by asking [plaintiff] to leave . . . was neither plainly incompetent nor involved a deliberate violation of the law." Id. at 11.

In the instant case, Savage was detained based on the claims of the 9th Street staff and McFarland that he had violated program rules and was required to leave. Savage, like the plaintiff in Higgins, responded with a conclusory verbal claim of entitlement. Savage Dec. at ¶¶ 9–11. A determination of reasonableness is not based on the subjective experience of the officers but whether the actions were reasonable from the eyes of a reasonable officer in a similar situation. Anderson v. Creighton, 483 U.S. 635, 637 (1987). The court finds that since the officers were unaware of the particular law governing evictions from transitional housing programs, and that the officers' determination that the 9th Street program staff were credible in their claim that plaintiff was trespassing, their actions were reasonable.

Accordingly, the officers are entitled to qualified immunity from liability on plaintiff's claim of unlawful detention.

11

### 2. Excessive Force Claim

The next inquiry is whether the officers are also entitled to qualified immunity on Savage's claim of excessive force. To determine whether the force used in a particular seizure is reasonable under the Fourth Amendment, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotations omitted). The proper application of the test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight. Id.

As noted in the court's ruling on the Berkeley defendant's evidentiary objections, the court will take plaintiff's deposition testimony, supported by defendants' evidence, as true for the purpose of the excessive force claim. Berkeley defendants claim that plaintiff attempted to leave the room while the officers were questioning him about his sex-offender status and as a result Hyunh grabbed Savage's arm to detain him. Defs.' Exh. B at 2:13–20. Savage characterizes the officers' restraint as "slamm[ing] him on the floor." Savage Dec. ¶¶ 14–16. He offers no other description of what "slamming" him means and does not describe in anymore detail what happened after Officer Huynh grabbed his arm. Id. Plaintiff claims that after the incident on June 10, 2004 he "went immediately to Kaiser Hospital" and subsequently suffered from a "dislocated and bruised shoulder." Savage Dec. at ¶¶ 10–11. The officers, in turn, contest this characterization of their detention of Savage and assert that no force was used other than that required to grasp Savage's arm. See Huynh Dec. ¶ 12.

Even assuming that Savage's characterization is accurate and that he suffered injury as a result of his detention, the officers' actions were reasonable in light of current law. Similar to the situation in Saucier, the officers were acting under the presumption that it was necessary to continue questioning the defendant and to advise him of the need to register as a sex offender. By leaving during the officer's questioning, Savage resisted a lawful detention and the officers acted to prevent him from leaving. See Saucier, 533 U.S. at 209. The court concludes that preventing Savage from leaving during the questioning, even where the force involved rose to the level alleged by Savage,

was reasonable under the circumstances. Savage has presented no case demonstrating a "clearly established rule prohibiting the officer[s] from acting as [they] did, nor [is the court] aware of any such rule." Id. at 209.

Thus, the officers are entitled to qualified immunity on the issue of excessive force and Berkeley defendants' motion for summary judgment on plaintiff's section 1983 claim of excessive force is GRANTED.

### 3. Substantive Due Process Claim

Similar to Savage's claim for excessive force, he argues that the officers violated due process in their use of force to detain him. To establish such a claim, Savage must demonstrate that the officers exhibited behavior so extreme that it "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 8434 (1998) (concluding that in a similar context plaintiff must allege intent to injure which would "rise to the conscience-shocking level"). For the same reasons that the court has determined that the officers acted reasonably in using force to detain Savage, their conduct did not rise to the level of shocking the conscience.

The court GRANTS the defendants' motion for summary judgment as to plaintiff's substantive due process claim.

### 4. Equal Protection Claim

Savage also argues that the officers violated his rights to equal protection of the laws when they referred to him as "boy," a comment he alleges was racially motivated, and when Hyunh threatened to arrest Savage the next time he saw Savage. Savage Dec. ¶ 12, 14. In contrast to the arguments presented by Berkeley defendants, Savage is not required to present general evidence that other people similarly situated to him were not abused in a similar way in order to proceed to trial on that claim. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 n.14 (1977) ("[A] consistent pattern of official racial discrimination is [not] a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act . . . would not necessarily be immunized by the absence of such discrimination in the making of other comparable decisions.") Savage sets forth specific facts, namely his testimony that he was harassed in racial terms, from which a jury could find that the defendants' conduct was motivated by a

13

discriminatory purpose. See Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987) (holding that contentions that "police officers called him 'nigger' and 'coon' . . . are sufficient to demonstrate racial animus."). To succeed on summary judgment, it is therefore the burden of the defendants to show by undisputed evidence that there was no discriminatory effect—that the search, detention and manner of dealing with Savage would have taken place even without a discriminatory animus—or was justified by some compelling governmental interest. Village of Arlington Heights, 429 U.S. at 271 n.21 (explaining that proof of discriminatory purpose "shift[s] to the [defendants] the burden of establishing that the same decision would have resulted even had the impermissible purpose not been considered"). Defendants have failed to establish by undisputed evidence that any compelling governmental purpose justified their alleged actions. Moreover, if a jury believed Savage's version of the events, it could conclude that he would not have been subjected to the same treatment absent a discriminatory purpose.

The court therefore DENIES summary judgment on Savage's equal protection claim.

### 4. *Monell* claim

Savage's second cause of action alleges violations of his constitutional rights by the City of Berkeley. He contends that acts of the two officers were caused by a custom, policy, pattern or practice of indifference to constitutional violations. Berkeley defendants ask the court to grant summary judgment on the basis that Savage has not presented any evidence of a custom or policy as required for respondeat superior liability pursuant to Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 691 (1978). While Savage argues that the police department had a custom of inadequate training on the civil nature of eviction proceedings, he provides no evidence sufficient to defeat summary judgment.

Defendants request for summary judgment on the *Monell* claim is GRANTED.

### C. Plaintiff's section 1985 Claims

Savage's seventh cause of action alleges a conspiracy to deprive him of equal protection

among the two officers, the City of Berkeley and unnamed defendants, Does 1-100. In particular, conspiracy requires evidence of an overt act in furtherance of the conspiracy. 42 U.S.C. § 1985(3). Savage has failed to provide any evidence of such a conspiracy.

The court GRANTS defendants' request for summary judgment as to this claim.

### B.  State law claims

The Berkeley defendants also ask the court for summary judgment on Savage's state law claims. As these claims raise many of the same issues as his federal claims, the court will address these briefly.

#### 1.  Tort Claims

Plaintiff alleges a number of tort violations against the officers: false detention (Third Cause of Action); battery (Fourth Cause of Action); intentional infliction of emotional distress (Sixteenth Cause of Action) and negligence (Seventeenth Cause of Action). Each of these claims is premised on Savage's allegation that the officers failed to investigate whether Savage had a right to be at 9th Street before detaining him. Defendants argue that the officers cannot be liable in tort because the decision to detain was a discretionary act even if the officers abused their discretion. Watts v. County of Sacramento, 136 Cal. App. 3d 232 (1982). In concluding that officers had evicted a person with a right to possession of the property, the court noted that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Id. at 235. (internal citations omitted). The facts of the Watts case are analogous to plaintiff's case. Plaintiff claims that Officers Huynh and Hong did not appropriately investigate whether or not plaintiff had a legal right to be at 9th Street and as such illegally detained him. Although Officers Huynh and Hong may have been mistaken in their assessment of the situation and relied on McFarland's allegedly erroneous information, their decision to order plaintiff to leave was clearly a discretionary act that falls within the holding of Watts. Therefore, Officers Huynh and Hong are immune from tort liability for acts committed in their discretion.

Accordingly, the court GRANTS defendants' request for summary judgment as to Savage's claim for false imprisonment, battery, intentional infliction of emotional distress, and negligence.

### 2. California Civil Code Sections 51.7 and 52.1

Savage presents two statutory claims, his fifth and sixth causes of action, under California Civil Code sections 51.7 and 52.1. The Berkeley defendants argue that his claim under Civil Code section 51.7, which prohibits racially motivated violence, must fail because Savage has not presented evidence of racial animus. The court disagrees. For the same reasons that the court concluded that Savage had alleged fact sufficient to survive summary judgment on his equal protection claim, it concludes that a jury could infer racial animus from the officers' calling Savage "boy," an alleged derogatory reference to his race.

Similarly, Civil Code Section 52.1(a) prohibits the use of violence in the interference with a person's constitutional rights. Berkeley defendants argue that Savage must show that the officers threatened violence against him. Cal. Civ. Code § 42.1(j) (requiring threat of violence for violation of section 42.1(a)). The court finds that Savage has met his burden of showing violence or threat of violence. Based on Savage's allegations that the officers used force to detain him, made a racial comment, and made threats to arrest him in the future, he has sufficiently demonstrated violence or threat of violence.

Accordingly, the court DENIES defendants' motion for summary judgment as to claims under California Civil Code sections 51.7 and 52.1.

### 3. Conversion

In his fifteenth cause of action, Savage alleges that the Berkeley defendants deprived him of his personal property. However, Savage has failed to provide evidence of the Berkeley defendants' involvement in any alleged deprivation sufficient to survive summary judgment.

Accordingly, the court GRANTS defendants' request for summary judgment.

CONCLUSION

**Plaintiff is given notice that he must file a signed copy of his declaration within ten (10)**

16

**days of the filing of this order or suffer loss of some or all of his claims depending upon the claims to which the declaration is critical, which can be determined from a review of this order. Failure to do so will result in a modification of this order as pertinent. The order herein <u>assumes</u> the filing of a signed declaration.**

The Court orders as follows:

1) The BOSS defendants' motion for summary judgment is GRANTED IN PART with respect to Savage's claims under the Transitional Housing Misconduct Act and DENIED IN PART with respect to the remaining claims against the BOSS defendants.

2) The Berkeley defendants' motion is GRANTED IN PART with respect to his claims for unlawful detention, excessive force, his <u>Monnell</u> claim, claims for false imprisonment, battery, intentional infliction of emotional distress, negligence and conversion.

3) The Berkeley defendants' motion is DENIED IN PART with respect to his claims for equal protection violations as well as violations of California Civil Code sections 51.7 and 52.1.

IT IS SO ORDERED.

Dated: March 22, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. Plaintiff's claim for breach of covenant of quiet enjoyment in contract pursuant to California Civil Code section 1927 is brought against BOSS itself and not against any of the other BOSS defendants. He separately alleges a cause of action under section 1927 in tort against all of the BOSS defendants.

2. All facts cited herein are taken from the complaint unless otherwise noted.

3. According to the BOSS defendants, Savage was never a tenant or a program participant. Savage was residing at 9th Street as part of the initial, three week probationary period pursuant to the Agreement between BOSS and Savage. See Tenancy Agreement, Boss Def's Mot., Ex. B, 1 ("The first three weeks of my stay at 9th Street are probationary and do not result in tenancy."). His probationary status is insufficient to claim the statutory protections afforded a tenant, they argue. In response, Savage admits that he was a resident on probationary status for the requisite three weeks and contends that upon complying with the terms of the Tenancy Agreement and paying his June he became a tenant. Savage Decl., Nov. 27, 2006, at 3:17–4:4. Furthermore, the agreement states that Savage's probationary period ended on May 26, 2004 and that on or before that date, he would be informed whether he was accepted into the program or written notification of his termination from the program. Tenancy Agreement, McFarland Decl., Ex. B, 1. On May 25, 2004 Savage's probationary status was extended for an additional two weeks provided that he meet certain conditions. Letter to Savage, May 25, 2004, McFarland Decl., Ex. D. Ten days later McFarland wrote to Savage to inform him that he was not accepted into the program for failure to comply with certain terms. Letter to Savage, June 5, 2004, McFarland Decl., Ex. E. The letter informed Savage of how to appeal this decision and, failing that, instructed Savage to leave the facility within five days. Id. Savage disputes the fact that he had failed to comply with the conditions set forth in the June 5th letter and contends that his compliance indicates that he was a tenant at the time the incident on June 10th. Savage Decl. ¶¶ 15-20. He further argues that his status was revoked in retaliation for reporting a gas leak in the 9th street facility. Savage Decl. ¶ 10. BOSS defendants dispute Savage's assertion that he reported the gas leak. McFarland Second Decl. ¶ 4 (asserting that he had no conversations with Savage about the gas leak and that a BOSS employee reported the leak to the gas company).

4. That provision reads in its entirety as follows:

> An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same.
>
> Cal. Civ. Code § 1927

5. That provision reads as follows:

(a) If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12-month period.

(c) It is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or

19

against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(d) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his or her rights under any lease or agreement or any law pertaining to the hiring of property or his or her right to do any of the acts described in subdivision (a) or (c) for any lawful cause. Any waiver by a lessee of his or her rights under this section is void as contrary to public policy.

(e) Notwithstanding subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(f) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(g) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(h) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

Cal. Civ. Code § 1942.5